JACOB L. HAFTER, ESQ.
Nevada State Bar No. 9303
MICHAEL NAETHE, ESQ.
Nevada State Bar No. 11222
LAW OFFICE OF JACOB L. HAFTER, P.C.
7201 W. Lake Mead Boulevard, Suite 210
Las Vegas, Nevada 89128
Tel: (702) 405-6700
Fax: (702) 685-4184

Attorney for Plaintiffs

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LATRICIA RICHARD, an individual; and LATRICIA RICHARD, as Personal Representative of the Estate of Baby Girl Richard,<br><br>        Plaintiffs,<br><br>  vs.<br><br>UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, a county hospital pursuant to NRS 450, et. seq.; DOE Defendants I through X, inclusive; and ROE CORPORATIONS A through Z, inclusive,<br><br>        Defendants. | **Case Number: 2:09-cv-2444**<br><br><br>**COMPLAINT**<br><br><br>**1. EMTALA VIOLATION FOR FAILURE TO SCREEN LATRICIA RICHARD AGAINST UMC**<br><br>**2. EMTALA VIOLATION FOR FAILURE TO TREAT LATRICIA RICHARD AGAINST UMC**<br><br>**3. EMTALA VIOLATION FOR FAILURE TO SCREEN BABY GIRL RICHARD AGAINST UMC**<br><br>**4. EMTALA VIOLATION FOR FAILURE TO TREAT BABY GIRL RICHARD AGAINST UMC** |

COMES NOW, Plaintiffs LATRICIA RICHARD, an individual, and LATRICIA RICHARD, as Personal Representative of the Estate of Baby Girl Richard, by and through their attorneys of record, the law firm of Law Offices of Jacob Hafter & Associates, and for cause of action against the above-named Defendants hereby complains and alleges as follows:

**PRELIMINARY STATEMENT**

1.        On December 8, 2009, Latricia Richard went to UMC's emergency department complaining of labor pains.  She knew that she was pregnant, was receiving prenatal care, and taking prenatal vitamins.  Based on ultrasound evidence, it was estimated that Ms. Richard was approximately 22 weeks pregnant on December 8, 2009.  Ms. Richard was placed in a room in the labor and delivery department and placed on an external fetal monitor.  She was never seen by a physician or any advanced nursing personnel.   Her cervix was never checked for dilation.  She was given a sleeping aid and sent home.  A few hours later, she went to her private medical doctor who checked her cervix and discovered that she was dilated and was in active labor.  Hs sent her via ambulance to UMC where she delivered her premature baby who died.

2.        This instant action is brought under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, *et. seq*., ("EMTALA"), as Ms. Richard, and her unborn fetus, went to two hospital emergency departments requesting care for a medical emergency, in that she was in active labor, and she was not provided screening or treatment as required under EMTALA.

3.        Pursuant to 42 U.S.C. § 1395dd(d)(2)(A), this instant action seeks damages for the personal harm suffered by Latricia Richard as a result of the lack of screening and medical treatment, as well as by Baby Girl Richard, for the same.

4.        As such cause of action is based upon a federal cause of action, part, if not all of this instant action is brought outside of the statutory caps for malpractice under Nevada state law, and the caps for state actors as set forth under NRS 41.035.

**PARTIES**

5.        At all relevant times, Plaintiff LATRICIA RICHARD ("RICHARD") was and is a United States citizen who was domiciled in the State of Nevada.

6.        Latricia Richard also bringing claims in this instant action on behalf of her daughter, BABY GIRL RICHARD, deceased, who was a United States citizen and was domiciled in the State of Nevada.

7.      Upon information and belief, it is alleged that at all time relevant hereto, Defendant UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA ("UMC"), was and is doing business as a county hospital pursuant to NRS §450, et. seq., and is domiciled within the State of Nevada.

8.      The true names and capacities, whether individual, corporate, associate, or otherwise, of DOE Defendants I through X and ROE CORPORATIONS A through Z are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated as DOE Defendants and ROE CORPORATIONS are responsible in some manner for the events and occurrences referenced in this Complaint, and/or owes money to Plaintiff and/or may be affiliated with one of the other Defendants or may claim some interest in the subject matter of this Complaint.  Plaintiff will ask leave of the Court to amend this Complaint and insert the true names and capacities of DOE Defendants I through X and ROE CORPORATIONS A through Z when the identities of the same have been ascertained, and to join said Defendants in this action.

9.      The acts performed by representatives of Defendants UMC whether such representatives have been individually named herein as a defendant, or are yet to be identified, were all ones which those representatives had the actual and/or apparent authority to perform, may have been within the scope of their employment, were of the kind they were authorized to perform, and were actuated at least in part by a desire to serve their employers, and therefore the entity defendants are liable for their acts pursuant to the doctrine of respondent superior.

**JURISDICTION AND VENUE**

10.      All of the acts complained of herein occurred in Clark County, Nevada.

11.      Jurisdiction is proper in this Court pursuant to the EMTALA, specifically 42 U.S.C. § 1395dd(d)(2)(A).

12.      Jurisdiction is also proper in the Court pursuant to 28 U.S.C. § 1331, as this instant action requires the interpretation and application of a federal statute.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER & ASSOCIATES

13.     Venue is properly conferred on this Court pursuant to 28 U.S.C. § 1391 (b) because the Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claims alleged herein took place in this District.

14.     Where applicable, all matters set forth herein are incorporated by reference in the various causes of action which follow.

## GENERAL ALLEGATIONS

15.     On December 8, 2009 at approximately 22:20, Richard arrived at UMC's emergency department.

16.     Richard was complaining of pain to her back, sides and stomach.

17.     Richard was sent to the Labor and Delivery Department.

18.     At 22:25, Richard signed into the Labor and Deliver Department.

19.     At 22:25, a registered nurse in the Labor and Delivery Department screened Richard.

20.     As a part of the screening, it was noted that there was a "possible onset of labor" which began at 15:00.

21.     Richard's pain was rated at a "6".

22.     At 22:30, Richard was placed in a bed in a room in the Labor and Delivery Department.

23.     Once in bed, Richard was placed on an external fetal monitor.

24.     At 22:40, Dr. Turner was "notified of the patient's status and orders [were] received for [catheterization, urinalysis, and] ambient 10 mg."

25.     Dr. Turner further ordered that "if negative results, may discharge to home, call if abnormal urinalysis."

26.     At 23:40, fetal heart tones were heard with a Doppler.

27.     At 00:25 on December 9, 2009, Richard received a bladder catheterization.

28.     Once catheterized, a urine specimen was sent for analysis.

29.     At 03:15, the results from the urinalysis were received from the lab.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

30.      The results were "negative".

31.      Richard was discharged home with "Pre Term Labor precautions."

32.      At 03:25, one 10 milligram Ambien tablet was taken by mouth by Richard per Dr. Turner's order.

33.      The Ambien was provided to Richard by the UMC nursing staff.

34.      At 03:25 someone from the nursing staff at UMC provided Richard with discharge instructions.

35.      Shortly thereafter, Richard went home.

36.      At approximately 09:30 on December 9, 2009, Richard went to her private physician as a follow up to her visit at UMC.

37.      Upon examination, it was found that Richard's cervix was dilated.

38.      It was also found that she had a "bulging bag of water."

39.      Richard was rushed via ambulance to UMC.

40.      At 13:16, Richard gave birth to Baby Girl Richard.

41.      Baby Girl Richard weighted 455 grams at birth.

42.      Baby Girl Richard was 25 centimeters long.

43.      At 13:21, Richard delivered the placenta.

44.      After 1 minute, Baby Girl Richard's APGAR score was a "1."

45.      After 5 minutes, Baby Girl Richard's APGAR score was a "1."

46.      After 10 minutes, Baby Girl Richard's APGAR score was a "0."

47.      No neonatal resuscitation efforts were provided to Baby Girl Richard.

48.      Baby Girl Richard was pronounced dead at 13:26.


## FIRST CAUSE OF ACTION

## EMTALA VIOLATION FOR FAILURE TO SCREEN LATRICIA RICHARD

### (Against Defendant UMC)

49.      Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

50.     EMTALA, specifically 42 U.S.C. §1395dd(a) states:

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

51.     EMTALA, specifically 42 U.S.C. §1395dd(b) states:

(b) Necessary stabilizing treatment for emergency medical conditions and labor

(1) In general. If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

52.     EMTALA, specifically 42 U.S.C. §1395dd(b), states:

(e) Definitions. In this section:

(1) The term "emergency medical condition" means—

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
(ii) serious impairment to bodily functions, or
(iii) serious dysfunction of any bodily organ or part; or
(B) with respect to a pregnant woman who is having

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

contractions—
> (i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or
> (ii) that transfer may pose a threat to the health or safety of the woman or the unborn child.

(2) The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

(3)
(A) The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).
(B) The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), that the woman has delivered (including the placenta).

53.     42 C.F.R. 489.24 defines "labor" as:

> the process of childbirth beginning with the latent or early phase of labor and continuing through the delivery of the placenta. A woman experiencing contractions is in true labor unless a physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certifies that, after a reasonable time of observation, the woman is in false labor.

54.     Defendant UMC is a hospital which has an emergency department covered under EMTALA.

55.     Upon information and belief, Defendant UMC has entered into a provider agreement under 42 U.S.C. § 1395cc.

56.     As a result of the provider agreement, Defendant UMC is obligated to comply

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

with EMTALA.

57.     On December 8, 2009, Richard came to the emergency department at UMC.

58.     Upon her arrival, Richard was in active labor.

59.     Richard requested an examination and treatment from UMC.

60.     Richard was complaining of pain to her back, sides and stomach.

61.     Richard was sent to the Labor and Delivery Department.

62.     At 22:25, Richard signed into the Labor and Deliver Department.

63.     At 22:25, a registered nurse in the Labor and Delivery Department screened Richard.

64.     As a part of the screening, it was noted that there was a "possible onset of labor" which began at 15:00.

65.     Richard's pain was rated at a "6".

66.     At 22:30, Richard was placed in a bed in a room in the Labor and Delivery Department.

67.     Once in bed, Richard was placed on an external fetal monitor.

68.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, performed a physical gynecological or obstetrical examination on Richard.

69.     Despite the complaints by Richard recorded in the medical record by the UMC nursing staff, there was no indication that any diagnosis or other appropriate medical screening was performed.

70.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certified that, after a reasonable time of observation, the Richard was in false labor before she was discharged from the Labor and Delivery Department of UMC.

71.     Upon Richard's departure from UMC, Richard continued to have labor pains.

72.     Such failure to provide Richard with a timely and appropriate medical screening for her active labor is a violation of 42 U.S.C. § 1395dd(a).

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
& ASSOCIATES

73.     Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Richard demands judgment against Defendant UMC, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

74.     Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

**SECOND CAUSE OF ACTION**
**EMTALA VIOLATION FOR FAILURE TO TREAT LATRICIA RICHARD**
**(Against Defendant UMC)**

75.     Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

76.     EMTALA, specifically 42 U.S.C. §1395dd(a) states:

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

77.     EMTALA, specifically 42 U.S.C. §1395dd(b) states:

(b) Necessary stabilizing treatment for emergency medical conditions and labor

(1) In general. If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

hospital determines that the individual has an emergency medical condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

78.    EMTALA, specifically 42 U.S.C. §1395dd(b), states:

(e) Definitions. In this section:

(1) The term "emergency medical condition" means—

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
   (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,
   (ii) serious impairment to bodily functions, or
   (iii) serious dysfunction of any bodily organ or part; or
(B) with respect to a pregnant woman who is having contractions—
   (i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or
   (ii) that transfer may pose a threat to the health or safety of the woman or the unborn child.

(2) The term "participating hospital" means a hospital that has entered into a provider agreement under section 1395cc of this title.

(3)
(A) The term "to stabilize" means, with respect to an emergency medical condition described in paragraph (1)(A), to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), to deliver (including the placenta).

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
&
ASSOCIATES

(B) The term "stabilized" means, with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility, or, with respect to an emergency medical condition described in paragraph (1)(B), that the woman has delivered (including the placenta).

79.     42 C.F.R. 489.24 defines "labor" as:

the process of childbirth beginning with the latent or early phase of labor and continuing through the delivery of the placenta. A woman experiencing contractions is in true labor unless a physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certifies that, after a reasonable time of observation, the woman is in false labor.

80.     Defendant UMC is a hospital which has an emergency department covered under EMTALA.

81.     Upon information and belief, Defendant UMC has entered into a provider agreement under 42 U.S.C. § 1395cc.

82.     As a result of the provider agreement, Defendant UMC is obligated to comply with EMTALA.

83.     On December 8, 2009, Richard came to the emergency department at UMC.

84.     Upon her arrival, Richard was in active labor.

85.     Richard requested an examination and treatment from UMC.

86.     Richard was complaining of pain to her back, sides and stomach.

87.     Richard was sent to the Labor and Delivery Department.

88.     At 22:25, Richard signed into the Labor and Deliver Department.

89.     At 22:25, a registered nurse in the Labor and Delivery Department screened Richard.

90.     As a part of the screening, it was noted that there was a "possible onset of labor" which began at 15:00.

91.     Richard's pain was rated at a "6".

92.     At 22:30, Richard was placed in a bed in a room in the Labor and Delivery Department.

93.     Once in bed, Richard was placed on an external fetal monitor.

94.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, performed a physical gynecological or obstetrical examination on Richard.

95.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certified that, after a reasonable time of observation, the Richard was in false labor before she was discharged from the Labor and Delivery Department of UMC.

96.     The only treatment which Richard received while at UMC was the oral administration of 10 milligrams of Ambien.

97.     Upon Richard's departure from UMC, Richard continued to have labor pains.

98.     No treatment was provided by UMC to address Richard's active labor.

99.     Within ten hours of Richard's departure from UMC, she gave birth to Baby Girl Richard.

100.    Such failure to provide Richard with a timely and appropriate medical stabilization for her active labor is a violation of 42 U.S.C. § 1395dd(a).

101.    Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Richard demands judgment against Defendant UMC, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

102.    Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

**THIRD CAUSE OF ACTION**

**EMTALA VIOLATION FOR FAILURE TO SCREEN BABY GIRL RICHARD**

**(Against Defendant UMC)**

103.     Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

104.     EMTALA specifically addresses the concept of "active labor" with respect to a condition "which may pose a threat [to] the health and safety of the patient or the ***unborn child***." 42 U .S.C. § 1395dd(e)(2)(B)-(C) (***emphasis added***).

105.     Because of the concern of the "unborn child," courts have found that an unborn fetus is considered a patient to whom hospitals have a duty to provide EMTALA screenings. See, e.g., *Preston v. Meriter Hosp., Inc*., 307 Wis.2d 704, 733, 747 N.W.2d 173 (Wis.App.,2008).

106.     Defendant UMC is a hospital which has an emergency department covered under EMTALA.

107.     Upon information and belief, Defendant UMC has entered into a provider agreement under 42 U.S.C. § 1395cc.

108.     As a result of the provider agreement, Defendant UMC is obligated to comply with EMTALA.

109.     On December 8, 2009, Richard came to the emergency department at UMC.

110.     Upon her arrival, Richard was in active labor.

111.     Richard requested an examination and treatment from UMC.

112.     Richard was complaining of pain to her back, sides and stomach.

113.     Richard was sent to the Labor and Delivery Department.

114.     At 22:25, Richard signed into the Labor and Deliver Department.

115.     At 22:25, a registered nurse in the Labor and Delivery Department screened Richard.

116.     As a part of the screening, it was noted that there was a "possible onset of labor" which began at 15:00.

COMPLAINT - 13

117.    Richard's pain was rated at a "6".

118.    At 22:30, Richard was placed in a bed in a room in the Labor and Delivery Department.

119.    Once in bed, Richard was placed on an external fetal monitor.

120.    No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, performed a physical gynecological or obstetrical examination on Richard.

121.    Despite the complaints by Richard recorded in the medical record by the UMC nursing staff, there was no indication that any diagnosis or other appropriate medical screening was performed.

122.    No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certified that, after a reasonable time of observation, the Richard was in false labor before she was discharged from the Labor and Delivery Department of UMC.

123.    Upon Richard's departure from UMC, Richard continued to have labor pains.

124.    Within ten hours of Richard's departure from UMC, she gave birth to Baby Girl Richard.

125.    At approximately 09:30 on December 9, 2009, Richard went to her private physician as a follow up to her visit at UMC.

126.    Upon examination, it was found that Richard's cervix was dilated.

127.    It was also found that she had a "bulging bag of water."

128.    Richard was rushed via ambulance to UMC.

129.    At 13:16, Richard gave birth to Baby Girl Richard.

130.    Baby Girl Richard weighted 455 grams at birth.

131.    Baby Girl Richard was 25 centimeters long.

132.    At 13:21, Richard delivered the placenta.

133.    After 1 minute, Baby Girl Richard's APGAR score was a "1."

134.    After 5 minutes, Baby Girl Richard's APGAR score was a "1."

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

135.     After 10 minutes, Baby Girl Richard's APGAR score was a "0."

136.     No neonatal resuscitation efforts were provided to Baby Girl Richard.

137.     Baby Girl Richard was pronounced dead at 13:26.

138.     UMC failed to provide Richard and her unborn fetus with the appropriate medical screening to confirm that she was in active labor.

139.     Such failure to provide Baby Girl Richard with a timely and appropriate medical screening for her mother's active labor is a violation of 42 U.S.C. § 1395dd(a).

140.     Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Richard, on behalf of the Estate of her deceased child, Baby Girl Richard, demands judgment against Defendant UMC, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

141.     Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

**FOURTH CAUSE OF ACTION**

**EMTALA VIOLATION FOR FAILURE TO SCREEN AND TREAT RICHARD**

**(Against Defendant UMC)**

142.     Plaintiffs reallege and incorporate the preceding paragraphs of this Complaint as if they were fully set forth herein.

143.     EMTALA specifically addresses the concept of "active labor" with respect to a condition "which may pose a threat [to] the health and safety of the patient or the ***unborn child***." 42 U .S.C. § 1395dd(e)(2)(B)-(C) (***emphasis added***).

144.     Because of the concern of the "unborn child," courts have found that an unborn fetus is considered a patient to whom hospitals have a duty to provide EMTALA screenings.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

See, e.g., *Preston v. Meriter Hosp., Inc.*, 307 Wis.2d 704, 733, 747 N.W.2d 173 (Wis.App.,2008).

145.     Defendant UMC is a hospital which has an emergency department covered under EMTALA.

146.     Upon information and belief, Defendant UMC has entered into a provider agreement under 42 U.S.C. § 1395cc.

147.     As a result of the provider agreement, Defendant UMC is obligated to comply with EMTALA.

148.     On December 8, 2009, Richard came to the emergency department at UMC.

149.     Upon her arrival, Richard was in active labor.

150.     Richard requested an examination and treatment from UMC.

151.     Richard was complaining of pain to her back, sides and stomach.

152.     Richard was sent to the Labor and Delivery Department.

153.     At 22:25, Richard signed into the Labor and Deliver Department.

154.     At 22:25, a registered nurse in the Labor and Delivery Department screened Richard.

155.     As a part of the screening, it was noted that there was a "possible onset of labor" which began at 15:00.

156.     Richard's pain was rated at a "6".

157.     At 22:30, Richard was placed in a bed in a room in the Labor and Delivery Department.

158.     Once in bed, Richard was placed on an external fetal monitor.

159.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, performed a physical gynecological or obstetrical examination on Richard.

160.     Despite the complaints by Richard recorded in the medical record by the UMC nursing staff, there was no indication that any diagnosis or other appropriate medical screening was performed.

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

161.     No physician, certified nurse-midwife, or other qualified medical person acting within his or her scope of practice as defined in hospital medical staff bylaws and State law, certified that, after a reasonable time of observation, the Richard was in false labor before she was discharged from the Labor and Delivery Department of UMC.

162.     Upon Richard's departure from UMC, Richard continued to have labor pains.

163.     Within ten hours of Richard's departure from UMC, she gave birth to Baby Girl Richard.

164.     At approximately 09:30 on December 9, 2009, Richard went to her private physician as a follow up to her visit at UMC.

165.     Upon examination, it was found that Richard's cervix was dilated.

166.     It was also found that she had a "bulging bag of water."

167.     Richard was rushed via ambulance to UMC.

168.     At 13:16, Richard gave birth to Baby Girl Richard.

169.     Baby Girl Richard weighted 455 grams at birth.

170.     Baby Girl Richard was 25 centimeters long.

171.     At 13:21, Richard delivered the placenta.

172.     After 1 minute, Baby Girl Richard's APGAR score was a "1."

173.     After 5 minutes, Baby Girl Richard's APGAR score was a "1."

174.     After 10 minutes, Baby Girl Richard's APGAR score was a "0."

175.     No neonatal resuscitation efforts were provided to Baby Girl Richard.

176.     Baby Girl Richard was pronounced dead at 13:26.

177.     UMC failed to provide Richard and her unborn fetus with the appropriate medical screening to confirm that she was in active labor.

178.     UMC failed to provide Richard and her unborn fetus with the appropriate and timely medical treatment to address her pre term labor.

179.     Such failure to provide Baby Girl Richard with a timely and appropriate medical stabilization for her mother's active labor is a violation of 42 U.S.C. § 1395dd(a).

180.      Wherefore, pursuant to 42 U.S.C. § 1395dd(d)(2)(A), Richard, on behalf of the

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

Estate of her deceased child, Baby Girl Richard, demands judgment against Defendant UMC, and any other Defendant yet to be identified, but responsible for the harm alleged in this cause of action, jointly and severally, for actual, general, special, compensatory damages in the amount of to be determined by a jury, and further demands judgment against each of said Defendants, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

181.       Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates to prosecute this action and are entitled to recover attorney fees and costs incurred pursuant to N.R.S 18.010, Federal Rule of Civil Procedure 54 and all other applicable law.

## ATTORNEY FEES

As a result of the Defendants' actions as set forth above, Plaintiffs have been required to retain the law firm of Law Offices of Jacob Hafter & Associates, to prosecute this action and has incurred and will continue to incur costs and attorney fees for which the Plaintiff is entitled to a separate award pursuant to N.R.S 18.010, as well as any other applicable statute or rule, in an amount to be determined by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to Fed.R.Civ.P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

1. For a judgment for the Plaintiff for all money damages available in a sum to be determined;

2. For a finding by this Court that as this instant action is based, in part, on a private federal cause of action, not in tort, the limitations on damages set forth in NRS 41.035 do not

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER &
ASSOCIATES

1    apply to Defendant UMC.

2       3.   For an award of attorney fees to the Plaintiff for his reasonable attorney's fees, court

3    costs and necessary disbursements incurred in connection with this lawsuit; and,

4       4.   For such other and further relief as the Court deems just and equitable.

5       Dated this 30th day of December, 2009.

6                              LAW OFFICE OF JACOB HAFTER & ASSOCIATES.

7

8

9    By:  _____

10             JACOB L. HAFTER, ESQ.
             Nevada Bar Number 9303
11           MICHAEL K. NAETHE, ESQ.
             Nevada State Bar No. 11222
12           7201 W. Lake Mead Blvd., Ste 210
             Las Vegas, Nevada 89128
13           Attorneys for Plaintiffs

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

7201 W. Lake Mead Blvd., Suite 210
Las Vegas, Nevada 89128
(702) 405-6700 Telephone
(702) 685-4184 Facsimile

JACOB HAFTER
ASSOCIATES

COMPLAINT – 19