UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LATRICIA RICHARD, *et al.,* | ) |
| Plaintiffs, | ) Case No. 2:09-cv-02444-LDG-PAL |
| vs. | ) **ORDER** |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, | ) (Mot. for Reconsideration - Dkt. #45) |
| Defendant. | ) |

Before the court is Defendant University Medical Center's ("UMC") Motion for Reconsideration and for FRCP 60(b)(6) Relief of Order Granting Plaintiffs' Motion for Discovery Related Sanctions and Motion to Strike (Dkt. #45). The court has considered the Motion, Plaintiffs' Opposition (Dkt. #50), and Defendant's Reply (Dkt. #54).

**BACKGROUND**

On September 21, 2010, the undersigned conducted a hearing on Plaintiffs' Motion to Strike (Dkt. #29) and Motion for Sanctions Regarding Discovery (Dkt. #31). Counsel for Plaintiffs appeared at the hearing. Counsel for Defendant did not. The two motions were docketed as separate docket numbers because they sought two separate forms of relief. However, both motions were contained in a single document. Defendant's response to both motions created considerable confusion in the record. Defendant filed a Response (Dkt. #33) September 2, 2010. The response was entitled "Defendant University Medical Center's Opposition to Plaintiffs' Motion to Strike." The opposition did not explicitly address Plaintiffs' Motion for Discovery Related Sanctions, and on September 3, 2010, Plaintiffs filed a Notice of Non-Opposition to Plaintiffs' Motion for Discovery Related Sanctions (Dkt. #34). The notice pointed out that Plaintiffs' combined Motion to Strike and Motion for Discovery Sanctions was refiled by the Clerk of the Court as two separate motions because FRCP 11(c)(2) requires that a Motion for Sanctions be filed

separately from any other motion. Plaintiffs noted that Defendant filed an opposition to the motion to strike, but did not file an opposition to Docket #31, Plaintiffs' Request for Discovery Sanctions. As such, Plaintiffs requested that the Motion for Discovery Sanctions be granted, including reasonable costs and attorneys fees incurred for bringing the motion.

UMC then filed what was docketed as "Notice of Corrected Image" (Dkt. #36), and a Supplement (Dkt. #37) to the Opposition to Plaintiffs' Motion to Strike and Motion for Discovery Related Sanctions. The "Notice" changed the title of Defendant's Opposition (Dkt. #33) to "Defendant University Medical Center's Opposition to Motion to Strike and Motion for Discovery Related Sanctions." The supplement asserted that, although Defendant's response only specifically addressed the motion to strike, it also implicitly opposed the motion for discovery sanctions on the same grounds, *i.e.,* that Defendant did not violate FRCP 26, and that sanctions were not appropriate. Later that same day, Defendant filed a Notice of Document Withdrawal (Dkt. #39). The document stated that Defendant UMC and its counsel "hereby withdraw Defendant University Medical Center's Opposition to Plaintiffs' Motion to Strike and Motion for Discovery Related Sanctions (Dkt. #36)."

The court set Plaintiffs' Motion to Strike (Dkt. #29) and Motion for Discovery Related Sanctions (Dkt. #31) for hearing on September 21, 2010, at 10:00 a.m. The notice of hearing was served on counsel for the parties on August 30, 2010, three weeks before the scheduled hearing. Counsel for Defendant did not appear, request a continuance of the hearing date, or advise the court or opposing counsel of any conflict in Defendant's counsel's schedule precluding attendance. At the hearing the court advised counsel for the Plaintiff that it appeared UMC had withdrawn its opposition to Plaintiffs' motion to strike and for sanctions. However, counsel for Plaintiff advised the court that he was not sure that this was counsel for Defendant's intent. The court orally granted both motions and subsequently entered a written Order (Dkt. #47) precluding the Defendant from using or relying upon medical records not timely disclosed, and specifically, the fetal/uterine monitoring records served after Plaintiffs served their expert report on counsel for Defendant. The court also granted Plaintiffs' request for reasonable costs and attorneys fees incurred for the necessity of filing the motion and gave counsel for Plaintiffs fifteen days from entry of the order to file and serve a memorandum, supported by the affidavit of counsel, establishing the amount of attorneys fees and costs incurred in bringing the motions.

In the current motion, Defendant asks that the court reconsider this order pursuant to FRCP 60(b). Defendant argues reconsideration is appropriate under Rule 60(b)(6), the "catch-all" provision which authorizes relief from an order for "any other reason that justifies relief." Defendant asserts that the notice of document withdrawal was misconstrued by the court. Defendant did not intend to withdraw its opposition to both motions and states "the Notice of Withdrawal merely withdrew a document that was filed under the wrong title." Counsel for Defendant also argues that she believed the court would not hear Plaintiffs' motion for sanctions unless it granted Plaintiffs' motion to strike, and her error should not be construed as a failure to oppose the motions. Defense counsel apologizes for failure to attend the hearing, representing the hearing was not placed on counsel's calendar as a result of an "office error."

Plaintiffs oppose the motion for reconsideration, arguing defense counsel's error in failing to schedule the hearing on their calendar, and failure to appear for the hearing are not exigent circumstances that require the court to reconsider its ruling. Additionally, counsel for Plaintiffs asserts the court's written Order (Dkt. #47) decided the matter on its merits, not merely because defense counsel appeared to have withdrawn their opposition. Counsel for Plaintiffs asks that the court not only deny Defendant's motion for reconsideration, but add the costs associated with opposing the motion for reconsideration to the pending request for fees and costs.

Defendant replies that the transcript of the September 21, 2010, hearing seems to support Defendant's contention that Defendant's actions confused the court. Defendant believes that the court granted the motions based on the impression that Defendant was withdrawing any opposition. A copy of the transcript of the hearing is attached to the reply.

**DISCUSSION**

Defendant seeks relief from the court's oral order, followed by a written Order (Dkt. #47) pursuant to FRCP 60(b)(6). Rule 60(b)(6) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Rule 60(b)(6) is a "catch-all" provision used "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). To receive relief under Rule 30(b)(6), a party must demonstrate extraordinary circumstances. *Id; see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 487 (stating that Rule 60(b)(6) relief may be had "to

accomplish justice" but only under "extraordinary circumstances."); *Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 966 (9th Cir. 2007) (finding Plaintiff had not met its burden under Rule 60(b)(6)'s "catch-all" provision which is to be used sparingly as an equitable remedy to prevent manifest injustice and only where extraordinary circumstances prevent a party from taking timely action to prevent or correct an erroneous judgment). In *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008), the Ninth Circuit held that "a party moving for relief under Rule 60(b)(6) 'must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion.'" *Id.; quoting Latshaw v. Trainer Wortham & Co., Inc.,* 452 F.3d 1097, 1103 (9th Cir. 2006).

An attorney's actions are typically chargeable to the client and do not ordinarily constitute extraordinary circumstances warranting relief under Rule 60(b)(6). *See Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). In *Lal*, the Ninth Circuit joined the Third, Sixth and Federal Circuits in holding that an attorney's gross negligence constitutes such an extraordinary circumstance. *Id.* The Ninth Circuit followed the Third Circuit in defining gross negligence as "neglect so gross that it is inexcusable." *Id*. In *Latshaw*, the Ninth Circuit denied Plaintiff's request for relief under Rule 60(b)(6) from a judgment resulting from her acceptance of an offer of judgment under Rule 68. The Plaintiff claimed that she accepted the offer based on her attorney's coercion and erroneous legal advice which constituted gross negligence. The Ninth Circuit declined to allow relief from a judgment entered under Rule 68 holding that the Plaintiff's attorney's conduct, even if grossly negligent, did not constitute grounds for Rule 60(b)(6) relief.

By contrast, in *Lal*, the Ninth Circuit granted Rule 60(b)(6) relief reversing the district court's order dismissing a Plaintiff's action for failure to prosecute under Rule 41(b), finding that the attorney had virtually abandoned the client. There, the attorney failed to make initial Rule 26 disclosures after being ordered to do so, failed to meet and confer and participate in the joint case management conference after being ordered to do so, and deliberately misled the client who was deprived of an opportunity to take action to preserve her rights. Under these circumstances, the court held that the attorney acted with gross negligence and that the Plaintiff had demonstrated extraordinary circumstances beyond her control that merited relief under Rule 60(b)(6).

///

The court finds that Defendant has not shown it is entitled to relief under Rule 60(b)(6). UMC has not shown that extraordinary circumstances prevented it from taking timely action to prevent or correct an erroneous order. The court was confused by the flurry of pleadings filed by UMC addressing Plaintiffs' motions. However, counsel for UMC could have prevented or corrected that confusion by simply appearing at the hearing. Counsel for UMC had three weeks advance notice of the hearing and access to the court's CM/ECF system to discover its calendaring error. Additionally, UMC has not shown that it has suffered an injury due to circumstances beyond its control. Finally, as explained in more detail below, the court considered and decided the moving and responsive papers on their merits, and did not grant the motion merely on Defendant's apparent withdrawal of its opposition.

At the September 21, 2010, hearing the court did not call the case until twenty-seven minutes after the hearing was scheduled because the prior case took longer on the calendar than anticipated. When counsel for UMC had still not arrived the court announced its intention to grant the motion referring to Defendant's Notice of Document Withdrawal (Dkt. #39). The court was under the impression Defendant was withdrawing its oppositions to the motions, especially because counsel for Defendant did not appear at the hearing. For this reason, the court did not articulate the rationale for granting the motion on its merits. Counsel for Plaintiffs did inform the court at the hearing that he believed defense counsel may not have intended to withdraw formal opposition based on his letter exchanges with opposing counsel on September 3, 2010. Counsel for Plaintiffs began to argue, but the court declined to take oral argument in the absence of opposing counsel. The court then inquired of counsel for Plaintiffs whether he really wanted an order precluding either side from using the fetal monitoring records at issue in the motions. Counsel for Plaintiffs responded affirmatively and inquired about attorneys fees and costs. The court directed counsel for Plaintiffs to file a memorandum supporting Plaintiffs' request for reasonable costs and attorneys fees incurred for the necessity of bringing the motion.

After the hearing, the court entered a written Order (Dkt. #47) partially articulating the rationale for the court's decision granting the motions. Although the court did not entertain oral argument on the merits because counsel for Defendant was not present, the court intended to, and did, decide the motions on the merits. This order clarifies and expands on the rationale articulated in the earlier written order (Dkt. #47).
///

The fetal monitoring records in dispute in the motion to strike were requested by counsel for Plaintiffs prior to filing suit. Counsel for Plaintiffs submitted a medical authorization release from his client requesting all of his client's medical records pertaining to the admission in dispute in this litigation. UMC acknowledged receipt of the request but asked Plaintiff to execute its own form of HIPPA-compliant medical authorization release. On December 16, 2009, counsel for Plaintiffs returned an executed medical authorization request on UMC's form. On December 29, 2009, counsel for Plaintiffs was notified that Plaintiffs' records were copied and ready upon payment of $64.80. Counsel for Plaintiffs paid the requested amount and received the records which were accompanied by a Certificate of Medical Records Custodian, Desirae Dudley, who attested "that the deponent was a Copy Technician in the Health Information Management Department, and in that capacity was the Custodian of Medical Records at UMC." See Dkt. #30, Exhibit "D" at ¶ 1 (filed under seal). The custodian attested that she received the release information requested pertaining to Plaintiff Latricia Richard. *Id*. at ¶ 2. She swore that she examined the original or microfilmed original of those medical records and made a true and correct copy of them "and that the reproduction of them attached hereto contains 104 pages and is true and complete." *Id*. The declaration of the custodian of records was subscribed to and sworn.

Defendant served initial disclosures required by Rule 26(a)(1) April 9, 2010. A copy of the Defendant's initial disclosure was attached as Exhibit "F" to Plaintiffs' motion to strike and for sanctions. The records were bates stamped number UMC 001 - 004, and UMC 2001 - 2089, and consisted of ninety-three pages of medical records. The Defendant's initial disclosures were also accompanied by a certificate of medical records custodian dated January 12, 2010. The Custodian, Sheila Espinosa, attested that she was a Copy Technician in the Health Information Management Department and was the Custodian of Records for UMC. Dkt. #30 at p.101. She attested that on January 12, 2010, she received release information requesting medical records pertaining to the Plaintiff, Latricia Richard. *Id.* at ¶ 2. She also attested that she examined the original or microfilmed original of the medical records and "made a true and exact copy of them and that the reproduction of them attached hereto contains ninety-three pages and is true and complete." *Id.* at ¶ 3.

Plaintiffs served a formal request for production of documents on the Defendant. Defendant's responses to Plaintiffs' first set of request for production were attached as Exhibit "H" to Plaintiffs' Motion

to Strike. Request No. 1 requested "any files (medical, billing, investigative, administrative) related to Latricia Richard and/or her unborn fetus. Defendants responded by objecting that the "request is vague, ambiguous and over broad which may impact documents protected by attorney/client privilege and/or attorney work product. Notwithstanding said objection, please see previously produced medical records therein of the Defendant's disclosure statement, specifically bates stamped numbers: UMC 001 - 004, and UMC 2001 - 2089.*"*

Counsel for Plaintiffs relied on the medical records received from UMC and its counsel to provide to their expert to prepare a report in this case. Plaintiffs served Defendant's counsel with a copy of Plaintiffs' expert report August 9, 2010. The expert report noted the lack of any uterine monitoring records in the Plaintiffs' medical records. Three days later on August 12, 2010, Plaintiffs received a supplement to Defendant's disclosures which included forty-six pages of additional medical records. The supplement included six pages of pathology records and what counsel for Plaintiffs believed to be uterine monitoring records. Counsel for Plaintiffs filed the motion to strike and for discovery sanctions seeking to preclude the Defendant from using them because they were only produced after Plaintiffs' expert report was served on opposing counsel. Plaintiffs' expert report noted that there was no evidence that when Plaintiffs presented to the emergency room in labor, uterine monitoring or cervical dilation examinations were conducted.

Defendant's first supplement to Rule 26(a)(1) initial disclosure statement was served by mail August 11, 2010, and is attached as Exhibit "H" to Plaintiffs' motion to strike under seal (Dkt. #30-4). The supplemental disclosure identified the additional documents produced as records of University Medical Center Department of Pathology and were Bates stamped numbers UMC 1005 - 1051. The first six pages of these supplemental medical records are on the letterhead of UMC's Department of Pathology and are Bates stamped UMC 1005 - 1010. The next document in the supplemental production is the Certificate of Custodian of Records, Laura Wicklein, Bates stamped UMC 1011. Ms. Wicklein attests that she is the Supervisor for the Pathology Department and in this capacity is the Custodian of Records for the Pathology Department at UMC. Dkt. #30-4 p. 26 of 66 at ¶ 1. She attests that she examined the original(s) of the record(s) and that the six attached pages were a true and complete copy of the records. *Id*. at ¶ 2. She attests that a request was made in connection with *Richard, et al. v. UMC*, Case No. 2:09-cv-02444. *Id.*

at ¶ 3. She does not say when the request was made for these records. However, her certificate of custodian of records was subscribed and sworn before a notary public on July 29, 2010. Ms. Wicklein's certificate pertains only to the six pages of UMC's Pathology Department records. The remaining pages of medical records, Bates stamped UMC 1012 - 1051 are not described, or accompanied by a certificate of the custodian of records. They clearly pertain to the Plaintiff and appear to be a paper printout from some type of testing apparatus. The documents were printed August 3, 2010. The court is profoundly disturbed that counsel for UMC would serve a supplemental initial disclosure statement on opposing counsel representing that forty-six pages of supplemental records were records of UMC's Pathology Department when it is clear, the custodian of records was only certifying that only six of the forty-six pages were records of the Pathology Department.

Plaintiffs' motion to strike asked the court to exclude these supplemental records because they were not timely disclosed. Clearly, they were not. Counsel for Plaintiffs requested a complete copy of all of the Plaintiffs' medical records from UMC before filing suit and was provided with a Certificate of a Custodian of Records who attested that a true and complete copy of *all* of the records was provided. After suit was filed, counsel for UMC served initial disclosures, again representing that *all* of Plaintiffs' medical records were provided. Plaintiffs then filed a formal request for production of documents seeking a complete copy of all of the medical records. Counsel for UMC served a response which objected to Plaintiffs' request for production of documents seeking all of her unborn fetus's files, but responded that they were previously produced in Defendant's initial disclosures, Bates stamped UMC 1001 - 1004, and UMC 2001 - 2089.

FRCP 37(c)(1) governs the failure to disclose information required to be disclosed under Rule 26(a). A party failing to provide information or identify a witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or as harmless."

Defendant's supplemental disclosures were not timely, and Defendant has not established that the failure to timely disclose the additional records was substantially justified or harmless. To the contrary, the supplemental disclosure of the fetal monitoring strips, forty of the forty-six pages of supplemental disclosures, were falsely described in the supplemental initial disclosure as Pathology Department records. They were not served on Plaintiffs until August 11 and were received August 12, 2010, three days after

Plaintiffs served Defendant's counsel with Plaintiffs' expert report which noted the lack of any uterine monitoring records in Plaintiffs' medical records. However, the fetal monitoring records appear to have been printed out on August 3, 2010, the date defense counsel requested them.

On June 17, 2010, Defendant UMC filed a Motion for Summary Judgment (Dkt. #15). Several days later, on June 21, 2010, Defendant UMC designated Doctors Dunn and DeVore as experts. Plaintiffs filed an Opposition (Dkt. #22) to Defendant's Motion for Summary Judgment on July 12, 2010. Defendant UMC filed a Reply (Dkt. #26) July 29, 2010, the same day the custodian of records for the Pathology Department signed the certificate of custodian of records attesting that six of the forty-six supplemental medical records Defendant served on Plaintiffs August 12, 2010, were true and accurate copies of the Pathology Department's records. Defendant's reply brief relies upon and refers to Plaintiffs' fetal heart monitoring records to support Defendant's position there is no material issue of fact whether Plaintiff was in labor at the time she presented to UMC. The reply brief states that Plaintiff was being monitored by a fetal monitor which monitored the baby's heartbeat and the mother's contractions, and the **tracings** showed no contractions. Reply (Dkt. #26 5:13-15). (emphasis supplied). To support this statement, Defendant's reply referred the court to Exhibit "A" to Plaintiff's opposition. Exhibit "A" to Plaintiffs' opposition (Dkt. #22-1) consists of Plaintiff's UMC obstetric triage record, the physician's order sheet, and discharge instructions. No tracings were part of Plaintiffs' Exhibit "A."

The reply also states "the medical records and the fetal monitoring **readings** establish that Plaintiff was not having contractions." *Id.* at 7:5-7. (emphasis supplied).

Defendant's Opposition (Dkt. #33) to Plaintiffs' motion to strike was filed September 2, 2010. Defendant argued there was no discovery violation because "[u]nbeknownst to defense counsel, when the entire records of the Plaintiff for her prenatal admission was requested, the medical records department did not copy the fetal monitoring strips unless specifically requested." The opposition represented that when defense counsel learned of this policy, the fetal monitoring strips were "immediately requested and disclosed." Defense counsel acknowledged that a certificate of the custodian of records was "inadvertently not included" with the supplemental disclosures. However, defense counsel argued that Plaintiffs suffered no prejudice because discovery did not close until September 17, 2010, and Plaintiffs had ample time to provide their expert with the fetal monitoring strips to allow their expert to supplement his report.

9

The opposition to the motion to strike was supported by the affidavits of Rebecca Bratton and Danielle Kolkoski attached as Exhibits "A" and "B" respectively. Defense counsel represents that counsel was not aware of UMC's policy that fetal monitoring strips have to be requested separately, and thus, Defendant was in full compliance with its discovery obligations under Rule 26. Defendant argues that it did not knowingly withhold documents from Plaintiffs, and that as soon as defense counsel realized that the fetal heart tracings were available but not part of the medical records produced, Defendant requested the strips separately and produced them.

Defense counsel may not have been initially aware that the fetal monitoring records were not provided by the Medical Records Department or that UMC's policy was not to provide them unless specifically requested. However, defense counsel had a duty to provide complete disclosures after a reasonable inquiry. Rule 26(g) requires at least one attorney for a party to sign every disclosure required by Rule 26(a)(1) or (a)(3) and every discovery request, response or objection. The rule is explicit:

> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry:
> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> (B) with respect to a discovery request, response or objection, it is
> (i) consistent with these rules . . .

The affidavit of Rebecca Bratton attests that she is the Director of Health Information Management for UMC and has been so employed for 7 ½ years. Opposition Dkt. #33, Exhibit "A" at ¶ 1. As the Director, she is familiar with the procedures of medical records requests in general and also with the requests that were made for the medical records for Plaintiff Latricia Richard. *Id*. at ¶ 3. She averred that "if the entire medical record is requested, the entire record as it exists at that time will be copied." *Id*. at ¶ 5. However, "certain parts of a medical record are not copied unless specifically requested based on volume of pages and cost. Fetal monitoring strips would not be copied unless specifically requested because of the volume of pages and the cost associated." *Id*. at ¶ 6. Her affidavit acknowledges that in the case of Plaintiff Latricia Richard, a request was made for the entire medical record. However, because fetal monitoring strips were not separately requested, they were not copied. *Id*. at ¶ 7. The fetal monitoring strips were specifically requested August 3, 2010, by defense counsel. *Id*. The fetal monitoring strips were copied August 4, 2010. *Id*.

The affidavit of Danielle Kolkoski attests that she is the Risk Management Associate and in-house counsel for UMC. Opposition Dkt. #33, Exhibit "B" at ¶ 1. She also attests she is familiar with the procedures for requesting medical records and with the requests made for the medical records of Plaintiff Latricia Richard. *Id*. at ¶ 3. The law firm of Jimmerson Hansen contacted her and requested fetal monitoring strips for Latricia Richards on August 3, 2010. *Id*. at ¶ 4. She also states that certain parts of medical records are not copied unless specifically requested because of the volume of pages and cost, and that fetal monitoring strips are not copied unless specifically requested for this reason. *Id*. at ¶ 5. However, she acknowledges that "in the case of Latricia Richard a request for the entire medical records was made, but I did not know that fetal monitoring strips had to be separately requested, so they were not copied. The fetal monitoring strips were specifically requested on August 3, 2010, and the request was made by the law firm of Jimmerson Hansen. The fetal monitoring strips were then copied on August 4, 2010." *Id.* at ¶ 6.

In summary, it is undisputed that Plaintiffs requested a complete copy of all of her medical records before suit and received a certificate of the custodian of records that Plaintiff received a true and correct copy of all of her records. It is undisputed that UMC served initial disclosures with a certificate of the custodian of records again attesting that Plaintiffs received a true and correct copy of all of Plaintiff's medical records. Defendant then answered Plaintiffs' formal discovery request reiterating that Plaintiffs had received all of her medical records in the initial disclosures. Counsel for Plaintiffs had no way of knowing about UMC's policy requiring a separate request for "certain parts of medical records" including fetal monitoring strips. UMC did not inform the Plaintiffs prior to suit, or in the initial disclosures, or in response to Plaintiffs' discovery requests, that fetal monitoring strips existed.

It may be reasonable to have a records policy which does not automatically provide certain categories of medical records, such as test strips which require a medical professional to understand or evaluate. It is not reasonable or consistent with Defendant's discovery obligations to respond to a request for *all* patient records with a certificate of a custodian of records stating that *all* records have been provided while at the same time failing to disclose a policy that certain records are not provided unless specifically requested. UMC's own Risk Management Associate and in-house counsel, Ms. Kolkoski, was not aware that when a patient or lawyer for a patient asks for a full and complete copy of the patient's medical records, certain parts of the medical records, including fetal monitoring strips, are not copied unless specifically

requested. Yet, UMC permits its custodians of records to provide certificates, signed under oath, certifying patients and Plaintiffs have received a true and complete copy of *all* of the medical records requested. It is neither reasonable, nor consistent with a party's discovery obligations, to fail to disclose a policy of not producing certain records unless specifically requested, while at the same time, certifying the requesting party has received all records.

It is not clear, because defense counsel's opposition does not state, when defense counsel became aware that fetal monitoring strips existed. However, Defendant's Reply (Dkt. #26) to Plaintiff's Opposition to Defendant's Motion for Summary Judgment referred to fetal monitoring tracings and fetal monitoring readings in support of Defendant's position summary judgment should be entered in its favor. The reply was filed July 29, 2010. Defense counsel must have known the fetal monitoring records existed to refer to them in the reply. Based on the affidavits of Ms. Bratton and Ms. Kolkoski, defense counsel requested the strips on August 3, 2010, six days before Plaintiffs' expert report was served, and nine days before UMC served supplemental document disclosures representing they were pathology records. Clearly, forty of the forty-six pages that were supplemented were not pathology records. Thus, Defendant's claim that the records were not purposely withheld rings hollow. They existed. UMC knew or should have known they existed, and did not produce them.

While the court accepts the representation of defense counsel that defense counsel did not initially know of UMC's policy to fail to copy certain medical records including fetal monitoring records unless specifically requested, that does not relieve counsel of the duty to make reasonable inquiry to ensure that *all* records are provided. Similarly, UMC's policy does not relieve it of its obligations to produce *all* of Plaintiffs' medical records pertaining to this admission as requested. It also does not explain why UMC provides certificates of its custodians of records attesting that it has produced a complete copy of *all* of a patient's medical records, when there are cases such as this one in which all records are not provided as a matter of policy, and the existence of that policy is not disclosed to the requesting party. UMC's failure to timely provide the fetal monitoring records was not substantially justified.

The failure to timely provide these records is also not harmless. The burden is on the party facing discovery sanctions for belated disclosures to show that the failure to comply with Rule 26(a) is substantially justified or harmless. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

Rule 37(c)(1) is a "self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Yetti by Molly, Ltd. v. Deckers Outdoor Court*, 259 F.3d 1101, 1106 (9th Cir. 2001). The court has the discretion to exclude evidence not disclosed, but mandated by Rule 26(a) without making a finding of willfulness or bad faith. *Hoffman v. Construction Protective Services, Inc.,* 541 F.3d 1175, 1180 (9th Cir. 2008). Plaintiffs' expert was retained and provided a report that relied upon the absence of the fetal monitoring records. To remedy Defendant's failure to disclose these records would have required remedial action and adjustment of the court's Discovery Plan and Scheduling Order. At a minimum, counsel for Plaintiffs and Plaintiffs' expert would have incurred additional costs and fees unnecessarily. The Ninth Circuit has recognized that disruption to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless. *See Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1062 (9th Cir. 2005).

To ensure that this failure to disclose does not reoccur, the court will require counsel for Defendant to provide a copy of this order to UMC's Director of Health Information Management, Rebecca Bratton, UMC's Risk Management Associate and in-house Counsel, Danielle Kolkoski, and UMC's Chief Executive Officer. UMC and its counsel are put on notice that any future failures to produce a complete copy of all medical records requested without disclosing a policy to fail to copy certain records, will result in severe sanctions, up to and including a recommendation to the district judge of case-dispositive sanctions.

For all of the foregoing reasons,

**IT IS ORDERED** that:

1. Defendant's Motion for Reconsideration (Dkt. #45) is **DENIED.**
2. Costs and attorneys fees incurred by counsel for Plaintiffs for filing the Motion to Strike and Motion for Discovery Sanctions (Dkt. ##29, 30) are **AWARDED** in the amount of $1,662.50, representing 4.75 hours of attorney time at the rate of $350/hour incurred in preparing the motions, reply and appearing for the hearing.

///

///

///

3. Counsel for UMC shall provide a copy of this order to UMC's Director of Health Management Information, Risk Management Associate and in-house counsel, and Chief Executive Officer, and file a certificate of compliance with this order no later than **January 24, 2011.**

Dated this 10th day of January, 2011.

_____
Peggy A. Leen
United States Magistrate Judge